UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOY D. DUVALL,<br>Plaintiff, | Case No. 1:17-cv-738<br>Barrett, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff Joy D. Duvall brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's statement of errors (Doc. 9), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

**I. Procedural Background**

Plaintiff protectively filed her application for DIB on February 27, 2014, alleging disability since January 17, 2010, due to anxiety, agoraphobia, and depression. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Regina Sobrino. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ video hearing on April 11, 2016. On June 17, 2016, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

2

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on March 31, 2015.
>
> 2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of January 17, 2010, through her date last insured of March 31, 2015 (20 CFR 404.1571, *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe impairments: affective disorder, anxiety disorder, substance use disorder, and joint dysfunction (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] could only occasionally climb ladders, ropes, or scaffolds, or crawl. With her dominant left arm, the [plaintiff] could occasionally perform overhead reaching and no more than frequent reaching in other directions. The [plaintiff] could perform frequent handling, fingering, and feeling. She was limited to simple, routine work not done at a production rate pace (e.g., no assembly line work), with minor changes in the work setting. The [plaintiff] could not perform work that required interaction with the public. She could tolerate routine contacts with coworkers and routine supervision.

3

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568).

10. Through the date[] last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from January 17, 2010, the alleged onset date, through March 31, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 12-22).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Plaintiff has past relevant work as a cashier, which is a light, unskilled position performed at medium level exertion. (Tr. 20, 50).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light unskilled jobs of inspector (180,000 jobs nationally), packager (130,000 jobs nationally), and bench assembler (125,000 jobs nationally). Plaintiff could also perform the requirements of representative sedentary unskilled jobs of inspector (130,000 jobs nationally), bench assembler (150,000 jobs nationally), and order checker (180,000 jobs nationally). (Tr. 21, 51).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ failed to properly evaluate the opinions of her treating psychiatric nurse practitioner and counselor; (2) the ALJ's mental RFC determination is not supported by substantial evidence because it fails to include all of her substantiated mental limitations; and (3) the ALJ failed to classify her obesity as a severe or non-severe impairment. (Docs. 9, 15).

1. **Whether the ALJ properly evaluated the opinions of plaintiff's treating psychiatric nurse practitioner and counselor.**

Plaintiff alleges in her first assignment of error that the ALJ completely disregarded the opinions from her treating psychiatric nurse practitioner, Ms. Patti Rodgers, and her treating counselor, Ms. Bobby Acuff. (Doc. 9 at 5). Plaintiff argues that the ALJ failed to adequately weigh these opinions under Social Security Ruling 06-03p and provided a "cursory explanation" for discounting these opinions. (*Id.* at 5-6). Plaintiff alleges that she has received treatment at Solutions Community Counseling and Recovery Center ("Solutions"), a mental health provider, since 2011. Plaintiff alleges that Ms. Rodgers, a psychiatric nurse practitioner at Solutions, is a reliable source for information about plaintiff's mental impairments and resulting limitations. (*Id.* at 6). Plaintiff alleges that Ms. Acuff has also treated her for a significant period of time and opined that she had several extreme mental limitations. (*Id.*). Plaintiff argues that the ALJ failed to discuss these opinions in accordance with the factors set forth in 20 C.F.R. § 404.1527(c)(2). Plaintiff maintains that Ms. Rodgers and Ms. Acuff's opinions are consistent with the record, which consistently documents her depression, anxiety, and bipolar disorder and the associated symptoms of these conditions. (*Id.* at 7).

In response, the Commissioner contends that the ALJ did not completely disregard the opinions from Ms. Rodgers and Ms. Acuff. (Doc. 14 at 3). The Commissioner argues that the ALJ reasonably afforded these opinions little weight because both Ms. Rodgers and Ms. Acuff began treating the plaintiff after her last insured date of March 31, 2015. (*Id.* at 4). The Commissioner states that the ALJ reasonably explained that the extreme and marked limitations opined by Ms. Acuff were not supported by the treatment records or clinical findings. (*Id.* at 4). The Commissioner contends that the ALJ need not discuss every factor listed in § 404.1527(c), but only needs to minimally articulate the reasons for the weight assigned to an opinion. (*Id.* at 5).

Psychiatric nurse practitioner Rodgers prepared a narrative opinion on plaintiff's behalf on February 26, 2016. (Tr. 577). Ms. Rodgers noted that plaintiff had been a client at Solutions since 2011 and she began working with plaintiff on August 7, 2015. (Tr. 577). Ms. Rodgers indicated that plaintiff had initially been diagnosed with a depressive disorder, but the diagnosis changed in December 2015 to Bipolar II Disorder. (*Id.*). Ms. Rodgers noted that plaintiff struggles with symptoms of anxiety and mood disorder. (*Id.*). Ms. Rodgers also stated that plaintiff regularly attended her appointments and was medication complaint. (*Id.*). Ms. Rodgers opined that plaintiff's prognosis was "guarded" and that she had quite severe limitations in her daily activities as a result of her mental health symptoms. (*Id.*). Ms. Rodgers indicated that plaintiff had difficulty leaving her home and continued to struggle intermittently with chronic suicidal ideation and feelings of hopelessness and helplessness, as well as a diminished vision of her ability to have any kind of quality of life in the future. (*Id.*).

On February 29, 2016, counselor Bobby Acuff completed a medical source statement as to plaintiff's mental ability to perform work related activities. (Tr. 582-84). Ms. Acuff opined that plaintiff had extreme limitations in the following areas: working in coordination or in proximity to others, relating to the general public, performing and completing work tasks in a normal work day, processing subjective information, maintaining attention and concentration, performing at expected production levels, responding appropriately to changes, being aware of hazards, and tolerating customary work pressures. (*Id.*). Ms. Acuff opined that plaintiff would be markedly limited in her ability to accept instructions, respond appropriately to coworkers, work in cooperation with others, and maintain personal appearance and hygiene. (*Id.*) Ms. Acuff further opined that plaintiff's condition was likely to deteriorate if she is placed under

7

stress of an 8 hour per day, 5 day per week job. (Tr. 584). Ms. Acuff concluded that plaintiff becomes very anxious, self-isolates, and loses focus when around other people. (*Id.*).

The ALJ afforded the opinions of Ms. Rodgers and Ms. Acuff "limited weight." (Tr. 17). The ALJ noted that Ms. Rodgers and Ms. Acuff were not considered "acceptable medical sources" under Social Security regulations, but recognized that opinions from other sources may be used to show the severity of impairments and how impairments affect an individual's ability to work. (*Id.*) (citing 20 C.F.R. § 404.1513(d)). The ALJ explained that both Ms. Rodgers and Ms. Acuff began treating plaintiff after the date last insured. (*Id.*). The ALJ also concluded that the "extreme" and "marked" limitations opined by Ms. Acuff were not supported by the record. (Tr. 17-18).

Under the Social Security regulations, evidence from an "acceptable medical source" is required to establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1513(a); SSR 06–03p, 2006 WL 2329939, at *2.[4] Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). However, evidence from "other sources" as defined under the regulations may be used to show the severity of the claimant's impairment and how it affects the individual's ability to work. 20 C.F.R. § 404.1513(d); SSR 06–03p. Other sources include opinions from medical sources such as nurse-practitioners and therapists. 20 C.F.R. § 404.1513(d)(1). An ALJ must weigh the opinions of "other sources," such as nurse practitioners and counselors, using the factors set forth in 20

---

[4] SSR 06-03p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017). Because plaintiff's claim was filed before the effective date of the rescission, SSR 06-03p applies here.

8

C.F.R. § 404.1527(c), taking into consideration "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Barrett v. Comm'r of Soc. Sec.*, No. 3:16-cv-00119, 2017 WL 2790666, at *4 (S.D. Ohio June 28, 2017). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

The ALJ's decision to give "limited weight" to the opinions of Ms. Rodgers and Ms. Acuff is supported by substantial evidence. The ALJ thoroughly summarized Ms. Rodgers and Ms. Acuff's opinions and correctly assessed that both Ms. Rodgers, plaintiff's psychiatric nurse practitioner, and Ms. Acuff, a qualified mental health professional and plaintiff's counselor, were not "acceptable medical sources" and therefore their opinions were not entitled to any special deference. (Tr. 17). "The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015) (citing *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (ALJ has discretion to determine proper weight to accord opinions from "other sources").

In addition, the ALJ appropriately considered that both Ms. Rodgers and Ms. Acuff did not begin treating plaintiff until after her date last insured. (Tr. 17). Plaintiff's insured status expired on March 31, 2015, and Ms. Rodgers and Ms. Acuff issued their opinions on February

9

26, 2016 and February 29, 2016 respectively. (*Id.*). Ms. Rodgers' narrative opinion does not indicate that plaintiff's limitations were of the same severity for the relevant time period – from January 17, 2010 through March 31, 2015 – as when she rendered her opinion in February 2016. (Tr. 577). Ms. Acuff was explicitly asked to opine whether plaintiff's condition "existed and persisted" with the restrictions Ms. Acuff assessed since January 17, 2010, but Ms. Acuff declined to answer the question. (Tr. 584). Plaintiff has made no attempt to show how these opinions relate back to her condition before her insured status lapsed. *See King v. Sec'y of H.H.S.*, 896 F.2d 204, 205-06 (6th Cir. 1990) (post-expiration evidence may be considered, but it must relate back to plaintiff's condition prior to the expiration of the date last insured). Thus, Ms. Rodgers and Ms. Acuff's opinions lack probative value in determining whether plaintiff was disabled at any time from her alleged onset date of January 17, 2010 through her last insured date of March 31, 2015. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (noting that a plaintiff must prove that she was disabled before the insured status expires); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (explaining that any evidence of disability obtained after the date last insured is generally of little probative value).

In addition, the ALJ offered reasonable explanations for assigning Ms. Acuff's opinion limited weight: it was not supported by plaintiff's treatment records or clinical findings from the relevant time period. (Tr. 18). Plaintiff argues that the record consistently documents her depression, anxiety, and bipolar disorder, and symptoms such as depressed mood, sleep problems, isolative behavior, feelings of helplessness and hopelessness, poor concentration, loss of interest, fatigue, irritability, crying spells, dysphoria, irritability, paranoia, hypervigilance, racing thoughts, decreased appetite and suicidal ideations, and thus is consistent with the opinions of Ms. Rodgers and Ms. Acuff. (Doc. 9 at 7) (citing Tr. 258, 262, 284, 308-09, 319,

10

412, 421, 450, 455, 535, 538, 558). However, the ALJ is tasked with weighing the evidence and resolving inconsistencies in the record. The ALJ noted that plaintiff while often reported depressive symptoms, her mental status examinations remained generally stable. (Tr. 18). In addition, the ALJ acknowledged the specialties of Ms. Rodgers and Ms. Acuff, the treatment relationship, and the consistency of the opinions as required by 20 C.F.R. § 404.1527(c). *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (ALJ not required to conduct an exhaustive factor-by-factor analysis of the factors listed in § 404.1527(c)). Accordingly, the ALJ adequately weighed the opinions of Ms. Rodgers and Ms. Acuff and plaintiff's first assignment of error should be overruled.

### 2. Whether the ALJ's RFC determination is supported by substantial evidence.

Plaintiff argues that the RFC determination fails to account for all of her mental limitations. (Doc. 9 at 8-9). Plaintiff argues that the ALJ did not incorporate all of the limitations opined by the state agency psychologists, whose opinions the ALJ relied upon when determining the RFC. (*Id.* at 9). Plaintiff maintains that the state agency psychologists noted that she has several moderate functional limitations and therefore limited her to simple to moderately complex tasks, superficial interaction with others, and a setting where duties remain relatively static and changes can be explained. (*Id.*) (citing Tr. 88). Plaintiff contends that the ALJ's RFC determination fails to correlate with the limitations set forth by the state agency psychologists, including moderate limitations in attention, concentration, and completing a normal work day. (*Id.* at 10). Plaintiff alleges that the functional narratives provided by the state agency psychologists failed to include these limitations. (*Id.*). Thus, plaintiff maintains that "the ALJ's reliance on these internally inconsistent opinions constitutes reversible error." (*Id.*). Plaintiff further argues that this error manifested itself into the vocational expert's testimony

because she was not given a hypothetical question regarding plaintiff's limitations in maintaining attention and concentration or completing a normal workday or week. (*Id.* at 10).

In response, the Commissioner contends that the ALJ properly accounted for plaintiff's mental functional limitations in the RFC. (Doc. 14 at 5). The Commissioner argues that the state agency psychologists' mental RFCs are recorded in the narrative discussion in the explanatory text boxes following each category and the ALJ therefore properly relied on these narratives to formulate the RFC. (*Id.* at 6). The Commissioner argues that the state agency psychologists made a final conclusion that despite plaintiff's moderate limitations in concentration, persistence, and pace, she could adequately adhere to a schedule, maintain attention, and complete simple to moderately complex tasks. (*Id.*) (citing Tr. 75, 88).

In reply, plaintiff maintains that "there are glaring inconsistencies between the functional narrative and the findings the state agency supposedly relied on to create the functional narrative." (Doc. 15 at 2).

Dr. David Demuth, M.D., reviewed the file and completed a mental residual functional capacity assessment on April 25, 2014. (Tr. 74-76). Dr. Demuth opined that plaintiff had sustained concentration and persistence limitations. (Tr. 74). Dr. Demuth opined that plaintiff was moderately limited in the following areas: her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; her ability to interact appropriately with the general public; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and her ability to respond appropriately to changes in the work setting. (Tr. 75). With regard to plaintiff's sustained concentration and persistence

12

limitations, Dr. Demuth explained in narrative form that plaintiff can "adequately adhere to a schedule, maintain attention and complete simple to moderately complex tasks." (Tr. 75). With regard to plaintiff's social interaction limitations, Dr. Demuth explained in narrative form that plaintiff can "interact with public, coworkers and supervisors on a superficial level." (*Id.*). With regard to plaintiff's adaptation limitations, Dr. Demuth explained in narrative form that plaintiff "can work in a setting where duties remain relatively static and changes can be explained." (*Id.*).

Dr. Denise Rabold, Ph.D./MA, reviewed the file for reconsideration purposes and completed a mental RFC assessment on October 1, 2014. (Tr. 87-89). Dr. Rabold largely affirmed the assessment of Dr. Demuth and added that plaintiff had moderate limitations in her ability to carry out detailed instructions and her ability to maintain attention and concentration for extended periods. (Tr. 87). Dr. Rabold also affirmed the narrative notes written by Dr. Demuth.

In determining plaintiff's mental RFC, the ALJ adopted the following limitations: plaintiff was limited to simple, routine work not done at a production rate pace (*e.g.*, no assembly line work), with minor changes in the work setting; plaintiff could not perform work that required interaction with the public; and plaintiff could tolerate routine contacts with coworkers and routine supervision. (Tr. 14). The ALJ afforded "significant weight" to the opinions of the state agency psychologists and noted that their opinions assessing moderate limitations were consistent with plaintiff's treatment history and clinical findings. (Tr. 19).

The ALJ's RFC determination is supported by substantial evidence. Plaintiff argues that the ALJ erred by adopting the state agency psychologists' opinions, who developed their functional narratives without including their responses to every question set out in the Disability Determination Explanation forms, *see* Tr. 74-76, 87-89. These forms explicitly provide that the

13

questions set out "help determine the individual's ability to perform sustained work activities." However, *"the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) . . . in the explanatory text boxes following each category of limitation."* (Tr. 74, 87). Plaintiff has not shown how the state agency psychologists' functional narratives are inconsistent with the questions assessed in the first sections of the Mental RFC Assessment forms. Specifically, plaintiff has not shown how moderate limitations in her ability to maintain attention, concentration, and complete a normal work day are inconsistent with the state agency psychologists' functional narratives opining that she "can adhere to a schedule, maintain attention and complete simple to moderately complex tasks." (Tr. 75, 88). Thus, the ALJ appropriately assessed the RFC based on the functional narrative of the state agency psychologists and adopted the following limitations: simple, routine work not done at a production rate pace with minor changes in the work setting, no work that requires interaction with the public, and only routine contacts with coworkers and routine supervision. (Tr. 14). *See Conklin v. Comm'r of Soc. Sec.*, No. 2:12-cv-1172, 2014 WL 897903, at *6 (S.D. Ohio Mar. 6, 2014) ("the ALJ did not err when he failed to specifically account for the moderate limitation noted by the state-agency reviewing psychologists in Section I of the Mental RFC Assessment form and instead relied on the narrative portion of the Assessment when arriving at Plaintiff's RFC.").

Moreover, plaintiff's assertion that the ALJ completely ignored her moderate limitations in attention, concentration, and completing a normal work day is belied by a review of the ALJ's decision. The ALJ noted that the RFC accommodated the restrictions associated with plaintiff's moderate limitation of social functioning and moderate limitation of functioning in the area of concentration, persistence, or pace by limitations to simple, routine work not done at a

14

production rate pace (*e.g.,* no assembly line work), with only minor changes in the work setting, no work requiring interaction with the public, routine contacts with coworkers, and routine supervision. (Tr. 20). Because the ALJ's hypothetical question incorporated all of the functional limitations that the ALJ found to be credible, plaintiff's argument regarding the exclusion of moderate limitations in attention, concentration, and completing a normal work day in the hypothetical question is without merit. Accordingly, plaintiff's second assignment of error should be overruled.

### 3. Whether the ALJ erred in failing to consider plaintiff's obesity as a medically determinable impairment.

Plaintiff argues that the ALJ erred by failing to classify her obesity as severe or non-severe medically determinable impairment at the second step of the sequential evaluation process. (Doc. 9 at 11). Plaintiff contends that the evidence present in the record supports a finding that her obesity is a medically determinable impairment that has more than a "minimal effect" on her ability to perform basic work activities. (*Id.* at 12) (citing Tr. 281, 294, 588, 592, 600, 613, 620, 625).

In response, the Commissioner argues that an ALJ need not designate each of plaintiff's impairments as "severe" or "not severe" and need only find that a plaintiff has a severe impairment or combination of impairments in order to proceed with the sequential evaluation process. (Doc. 14 at 8). The Commissioner contends that "the real issue is not whether individual impairments are severe, but whether the ALJ considered the functional limitations resulting from all of the [plaintiff]'s impairments at the remaining steps of the sequential evaluation process." (*Id.*). The Commissioner alleges that the ALJ mentioned plaintiff's weight gain and "considered the medical records and treatment notes from the physicians who included

15

the effects of obesity in their opinions and assessments." (*Id.*). The Commissioner further maintains that the record is "devoid of any specific functional limitations Plaintiff may have had due to her obesity that were not accounted for in the ALJ's residual functional capacity assessment." (*Id.* at 9).

In reply, plaintiff argues that the ALJ failed to acknowledge her medically determinable impairment of obesity. (Doc. 15 at 4-5).

At step two of the sequential analysis, the ALJ determined that plaintiff had the following severe impairments: affective disorder, anxiety disorder, substance use disorder, and joint dysfunction. (Tr. 12). The ALJ noted that these impairments "cause more than minimal functional limitations." (*Id.*). The ALJ did not address whether plaintiff's obesity constituted a severe or non-severe impairment.

The undersigned finds that the ALJ's failure to characterize plaintiff's obesity as a medically determinable impairment does not constitute reversible error. The record is devoid of any obesity diagnosis or opinion from a medical source that plaintiff's weight caused functional limitations. In support of her argument, plaintiff cites treatment notes mentioning a BMI of over 30 and abnormal weight gain. (*See* Tr. 592 (BMI of 31.8), 600 (BMI of 31.2), 613 ("abnormal weight gain"), 620 (BMI of 29.9), 625 (BMI of 29.8)). However, these records fail to demonstrate how her obesity has more than a minimal affect on her ability to work as required to establish a severe impairment. Plaintiff has not identified any evidence showing her obesity contributed to any functional limitations. In light of the regulations requiring that a claimant "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about your medical impairment(s) and . . . its effect on your ability to work on a sustained basis," 20 C.F.R. § 404.1512, a claimant relying on obesity to establish disability should provide

evidence that obesity affects her ability to work. *Snyder v. Comm'r of Soc. Sec.*, No. 2:10-cv-00821, 2012 WL 27302, at *8 (S.D. Ohio Jan. 5, 2012) (Report and Recommendation), *adopted*, 2012 WL 871202 (S.D. Ohio Mar. 13, 2012) (citing *Cranfield v. Comm'r, Soc. Sec.*, 79 F. App'x 852, 857-58 (6th Cir. 2003) (finding that even though physician's reports indicated obesity, the ALJ was not obligated to address the claimant's obesity in light of the claimant's failure to provide evidence that her obesity was a significant impairment that affected her ability to work); *May v. Astrue*, No. 4:10-cv-1533, 2011 WL 3490186, at *6 (N.D. Ohio June 1, 2011) (holding that the ALJ had no obligation to address a claimant's obesity when, despite a diagnosis of obesity in the record, the claimant did not carry burden of demonstrating there were any "functional limitations ascribed to the condition[ ]")). Plaintiff has not directed the Court to any additional evidence that indicates how inclusion of her obesity as a medically determinable impairment would have changed the ALJ's assessment of her functional limitations. To the contrary, the record demonstrates that plaintiff's physical limitations consisted of minor arthritis and arthritic changes in her shoulder, elbow, and hand. (Tr. 15). In a March 2014 function report, plaintiff reported that her activities of daily living were limited by difficulty concentrating, anxiety, and insomnia, but she did not report any problems lifting, carrying, standing, walking or reaching. (*Id.*) (citing Tr. 200-07). A June 2014 state agency consultative examination revealed that plaintiff had decreased strength in her left shoulder girdle, but she otherwise had intact fine motor abilities and was not limited in her abilities to travel, walk, sit, or stand. (Tr. 18) (citing Tr. 412-14).[5]

To the extent plaintiff argues that the ALJ erred by not finding plaintiff's obesity a severe

---

[5] To the extent plaintiff's weight gain was a symptom of her depressive disorder, the ALJ fully considered plaintiff's limitations from her mental impairments.

impairment, any such error would be harmless. An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ finds that the claimant "has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "This rule is predicated on the notion that the ALJ 'properly could consider [the] claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity." *Id.* (quoting *Maziarz*, 837 F.2d at 244). Here, the ALJ found that plaintiff's joint dysfunction constituted a severe physical impairment and conducted a thorough review of the physical evidence of record at the remaining steps of the sequential analysis, including those records mentioning plaintiff's BMI. Accordingly, plaintiff's third assignment of error should be overruled.

Based on the foregoing, **IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case is closed on the docket of the Court.

Date: 12/27/18

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JOY D. DUVALL,
Plaintiff,

Case No. 1:17-cv-738
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).